NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCISCO VILLEGAS, | Hon. Renée Marie Bumb |
| Petitioner, | Civil Action No. 04-3222 (RMB) |
| v. | |
| ROY L. HENDRICKS, et al., | **OPINION** |
| Respondents. | |

APPEARANCES:

    FRANCISCO VILLEGAS, #185716B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08625
    Petitioner pro se

    LAURIE A. CORSON, Assistant Prosecutor
    VINCENT P. SARUBBI, CAMDEN COUNTY PROSECUTOR
    25 North Fifth Street
    Camden, New Jersey  08102
    Attorneys for Respondents

BUMB, District Judge

    Francisco Villegas filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey. Respondents filed an Answer, arguing that the Petition should be dismissed as untimely and on the merits. Petitioner filed a Traverse. For the reasons expressed below, the Court dismisses the Petition with prejudice as untimely, and declines to issue a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I. BACKGROUND

Petitioner challenges a judgment of conviction filed on May 12, 1995, in the Superior Court of New Jersey, Law Division, Camden County, after a jury convicted him of first degree murder, second degree possession of a weapon for an unlawful purpose, and third degree unlawful possession of a handgun. The Law Division sentenced Petitioner to life imprisonment, with 30 years of parole ineligibility, for murder, and to a consecutive five-year term on the weapons charge. Petitioner appealed, and on November 7, 1996, the Superior Court of New Jersey, Appellate Division, affirmed. State v. Villegas, No. A-6775-94T5 (App. Div. Nov. 7, 1996). On July 24, 1997, the Supreme Court of New Jersey denied certification. State v. Villegas, 149 N.J. 141 (1997) (table).

The Appellate Division set forth the facts surrounding the crime as follows:

> Carlos Ferreras (Ferreras) was murdered at about 7 p.m. on October 31, 1992. Villegas, known as "Paquito," and Ferreras had been friends for several years; Villegas was also close to Ferreras' mother and two sons. On the evening of the murder, Villegas went to the home of Ferreras' mother, Isabel Medrano (Medrano), on 35th Street in Camden. Medrano testified that Villegas hugged her when he arrived at her home. When she put her arms around him, Medrano felt a weapon . . . When asked if she could be more specific regarding the type of weapon Villegas carried, Medrano's testimony was confusing. She replied, "Well, I cannot tell you exactly whether it was a knife or what, but I do know it was a revolver." Medrano testified that Villegas was wearing a blue jacket, blue

pants with a pink v-shaped line on them, a white cap, and white sneakers.

Villegas asked Medrano to summon her son, telling her that he wanted to borrow fifteen thousand dollars. When Ferreras arrived, he, Villegas and Medrano ate dinner. After eating, Villegas left Medrano's home, asking Ferreras to wait a few minutes for his return. He did not return.

Ferreras' two sons - Charles, then thirteen, and Christopher, then eleven - lived with Medrano. They apparently planned to spend that night at their father's home in Philadelphia. Ferreras' Honda Accord was parked on the street behind Medrano's house, near a streetlight. Ferreras got behind the wheel of the car. Charles and Christopher were quarreling over which of them would ride in the front seat. Charles was sitting in the front passenger seat, facing his brother; Christopher was lying on the ground outside the car. Charles was apparently offering to let Christopher ride in front when a man approached the passenger door from the back of the car. The man opened the passenger door fully, yelled the work "maricon" at Ferreras, and began firing a gun at him. Ferreras died from gunshot wounds to the chest, hand, head and back.

Charles, inside the car during the incident, testified that he recognized Villegas, whom he knew as "Paquito," as the attacker as soon as Villegas put his head in the car. During the incident, Villegas' face was five or six inches away from Charles' face. Charles saw Ferreras struggle for the gun as the first shots were fired. After Ferreras "went down," Charles testified that "Paquito shot him a couple of times in the head." Villegas then ran off in the direction from which he had come.

The younger brother, Christopher, was outside of the car on the ground when the attacker approached. He saw a man approach

from the back of the car, heard him curse at his father, and saw him shoot into the car. When the shooting began, Christopher crawled underneath the car. Christopher testified that the killer was wearing a white hat and white sneakers. He saw part of the killer's face, but was unable to say whether or not it was Villegas.

The boys ran to their grandmother's home and pounded on the door. Charles, whose clothes were stained with his father's blood, exclaimed to Medrano that "Paquito shot daddy." Christopher phoned 911.

Charles and Christopher were taken to the police station, where they waited in a room until their aunt, Marcia Ferreras (Marcia), arrived. The first thing Charles said to his aunt was that "Paquito" had killed his father. Marcia was upset and incredulous, so she reacted by saying, "Don't say that."

When Charles was first questioned by the police, he did not tell them that he recognized the shooter as Villegas, his father's friend. Based on the information provided by Charles and Christopher, the police made a computer composite of the suspect. Both boys said the composite looked like the person who shot their father. When asked if he knew the person's name, Charles stated that the composite sketch "looked like Paquito." Charles subsequently selected Villegas' photograph from an eight-person photo array. He did so without hesitation.

Charles testified that the reason he told police in his initial statement only that the shooter "looked like" Villegas was because he was "nervous, scared, afraid," and influenced by Marcia's reaction to his initial unequivocal identification. At trial, Charles explained that he was certain from the beginning that Villegas was the perpetrator. Charles did not tell the police he was certain that Villegas was the shooter until November 2, three days after the

4

>    murder. He explained at trial that between
>    the time of the murder, October 31, and the
>    time of his second statement, November 2, he
>    spoke to Father Larry, the priest at his
>    church who was "like a friend" to Charles.
>    He said that Father Larry told him "to have
>    trust in God and just to tell the truth" and
>    nothing would happen to him.
>
>    The police found a blue pickup truck
>    parked behind the victim's Honda and a set of
>    keys in the vacant lot across the street.
>    The truck belonged to Samuel Gutierrez.
>    Evelisse Gutierrez (Gutierrez), a witness for
>    the defense, testified that Villegas had
>    borrowed her husband's truck at about 3 p.m.
>    on the day of the murder. Villegas' niece,
>    Romelia Villegas, testified that, about six
>    weeks before the murder, she had asked
>    Villegas to move a refrigerator for her. By
>    October 31, the refrigerator had already been
>    moved, but Romelia Villegas had not told this
>    to her uncle.
>
>    Gutierrez also testified that Villegas
>    came to her house at about 7 or 7:30 p.m. on
>    the night of the murder to tell her husband
>    that the truck had been stolen and to ask her
>    to report it to the police. Gutierrez told
>    him that she could not report the theft until
>    her husband returned home. Villegas twice
>    returned to Gutierrez's home to urge her to
>    call the police and report the truck stolen.
>    On the third occasion, he apparently gave a
>    girl across the street a quarter to call the
>    police and report the stolen truck.

State v. Villegas, Docket No. A-6775-94T5 slip op. at 2-6 (App. Div. Nov. 7, 1996).

On June 23, 1998, Petitioner executed a pro se motion for a new trial based upon newly discovered evidence. On July 15, 1998, the trial judge dismissed the motion without prejudice for failure to satisfy the requirements of New Jersey Court Rule 1:6-

6.   On September 1, 1998, Petitioner executed a second pro se motion for a new trial based upon newly discovered evidence, which the trial judge dismissed without prejudice on September 18, 1998, on the ground that Petitioner was represented by counsel.  On May 11, 2000, Petitioner filed a motion for a new trial and a motion for grand jury transcript.  By cover letter dated May 12, 2000, counsel filed a petition for post conviction relief challenging Petitioner's conviction and seeking a new trial.  On June 23, 2000, the trial judge dismissed the motion for post conviction relief without prejudice based on failure to state with specificity the facts on which the claim for relief was based.  On the same date, the trial judge again dismissed the motion for a new trial without prejudice, as insufficient under New Jersey Court Rule 1:6-6.  On September 26, 2000, after conducting an evidentiary hearing, the trial judge dismissed the petition for post conviction relief for failure to submit original affidavits.

On October 31, 2000, through counsel, Petitioner filed a motion to reconsider the order denying the motion for a new trial.  On January 9, 2001, the trial judge granted the motion to reconsider, scheduled a post conviction relief hearing, and ordered briefs.  On September 20, 2001, the trial judge denied the petition for post conviction relief, as well as Petitioner's motions for discovery and for a new trial.  Petitioner appealed.

The Appellate Division affirmed all orders in an opinion filed February 26, 2004. State v. Villegas, No. A-4222-01T4 (App. Div. Feb. 26, 2004). On May 21, 2004, the New Jersey Supreme Court denied certification. State v. Villegas, 180 N.J. 356 (2004) (table).

Petitioner executed the Petition which is now before the Court on July 1, 2004. The Clerk received it on July 6, 2004. The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents two grounds:

> Ground One: HABEAS CORPUS SHOULD BE GRANTED BECAUSE NUMEROUS INSTANCES OF TRIAL COUNSEL'S INEFFECTIVENESS DEPRIVED PETITIONER OF ADEQUATE ASSISTANCE OF COUNSEL.[1]
>
> Ground Two: HABEAS CORPUS SHOULD BE GRANTED BECAUSE THE NEWLY PRESENTED EVIDENCE

---

[1] As factual support, Petitioner asserts that counsel refused to permit Petitioner to testify, failed to advise Petitioner of the disadvantages and advantages of testifying, failed to inform Petitioner that Petitioner had the ultimate authority to decide whether or not to testify, failed to use the composite drawing, failed to request a voir dire of the jury, failed to argue that the victim was shot by a left handed person and Petitioner is right handed, failed to move for a speedy trial, failed to present expert testimony regarding the reliability of the identification by the victim's minor son, failed to request a Wade hearing, failed to move for dismissal of the indictment, failed to adequately cross examine witnesses, and failed to object to testimony regarding other crimes.

>               INDICATES THAT PETITIONER IS ACTUALLY
>               INNOCENT OF THE CRIME FOR WHICH HE WAS
>               CONVICTED.[2]

(Pet. ¶¶ 12.A. -12.B.)

The State filed an Answer, arguing that the Petition is untimely, certain ineffective assistance of counsel claims are procedurally defaulted, and the grounds raised do not warrant habeas relief. Petitioner filed a Traverse, arguing that the AEDPA's one year statute of limitations does not preempt New Jersey's five-year statute of limitations for post conviction relief and that the interval between the time when direct appeal became final and the time when post conviction review became final was statutorily tolled or equitably tolled. Petitioner further argues that the grounds presented in the Petition warrant habeas relief because he was actually innocent.

## II. DISCUSSION

### A. Statute of Limitations

On April 24, 1996, Congress enacted the AEDPA, which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody

---

[2] As factual support, Petitioner alleges that he presented evidence showing that, as he was dying, Elioso Colon confessed to his wife and son that he had killed the victim and he felt remorse that Petitioner had been wrongfully convicted. Petitioner learned of the confession when Colon's wife visited him in prison in February 1997.

pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

The statute of limitations under § 2244(d) is subject to two tolling exceptions: statutory tolling and equitable tolling. Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998). Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and

acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000).

The AEDPA statute of limitations is also subject to equitable tolling. Miller, 145 F.3d at 618. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005). The Third Circuit instructs that equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005). Mere excusable neglect is not sufficient. Id.; Merritt, 326 F.3d at 168; Miller, 145 F.3d at 618-19; Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999). Nor is attorney error.[3]

---

[3] See Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002) (equitable tolling is not permitted even where the petitioner relied on erroneous advice from his state public defender that he had one year from the state's denial of post-conviction relief to file his federal habeas petition); Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001) (in non-capital cases, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling").

10

Extraordinary circumstances have been found where (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). Even where extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

In this case, the applicable limitations provision is § 2244(d)(1)(A), the date on which the judgment became final by the conclusion of direct review.[4] The Supreme Court of New Jersey

---

[4] Although Petitioner does not argue that the statute of limitations began to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," see 28 U.S.C. § 2244(d)1)(D), the Court has considered this issue since Petitioner claims in Ground Two that newly discovered facts show that he is actually innocent of murder. Section 2244(d)(1)(D) is not applicable, however, because Petitioner discovered the new
(continued...)

11

denied Petitioner's petition for certification on direct review by order filed April 24, 1997. See State v. Villegas, 149 N.J. 141 (1997) (table). The statute of limitations therefore began to run 90 days later, on July 24, 1997, the date on which the judgment became final by the expiration of the time for filing a petition for certiorari in the United States Supreme Court. See Long v. Wilson, 393 F.3d 390 394 (3d Cir. 2004); Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999); 28 U.S.C. § 2244(d)(1)(A).

The limitations period ran for 333 days until it was statutorily tolled on June 23, 1998, the date on which Petitioner handed his first post conviction motion for a new trial to prison officials for mailing to the Law Division. The Court assumes for the sake of argument (without deciding) that the statute of limitations did not pick up again until May 22, 2004, the day after the New Jersey Supreme Court denied certification on post conviction review. See State v. Villegas, 180 N.J. 356 (2004) (table). In that case, the statute of limitations ran for the final 32 days and expired on June 23, 2004. Because Petitioner

---

[4](...continued)
evidence (confession of Colon) in February 1997, before Petitioner's conviction became final on July 24, 1997. Because one year from the date on which the judgment became final (July 24, 1997), see 28 U.S.C. § 2244(d)(1)(A), is later than one year from the date on which the factual predicate of the claim could have been discovered (February 1997), see 28 U.S.C. §§ 2244(d)(1)(D), the applicable provision is § 2244(d)(1)(A).

12

did not sign his § 2254 Petition until July 1, 2004, the Petition is untimely unless Petitioner is entitled to equitable tolling. See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Nara v. Frank, 264 F.3d 310, 315 (3d Cir. 2001); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

Petitioner argues that the statutory tolling period ran from July 24, 1997, the date on which the judgment became final by the expiration of the time for seeking direct review, and May 21, 2004, the date on which the New Jersey Supreme Court denied certification on post conviction review. He contends that, because his petition for post conviction relief was "properly filed" within the five-year period authorized by New Jersey Court Rule 3:22-12, the limitations period was statutorily tolled during the 333-day period between the conclusion of direct review on July 24, 1997, and the filing of Petitioner's first post conviction motion on June 23, 1998. Petitioner refers to the definition of "pending" in Carey v. Saffold, and Schwartz v. Meyers, 204 F.3d 417, 421 (3d Cir. 2000), arguing that his reading of the statute would permit New Jersey prisoners to utilize all five years allotted to them by New Jersey law, without federal interference, while preserving every day of the one-year federal statute of limitations.

This argument fails because it is contrary to the plain language of § 2244(d)(1) and (d)(2). See, e.g., Day v.

13

McDonough, 126 S. Ct. 1675 (2006); Long, 393 F.3d at 394-95. Under § 2244(d)(1), the limitations period began to run on July 25, 1997, the date on which the judgment of conviction became final by the expiration of the time for filing a petition for certiorari. Statutory tolling was not triggered until Petitioner filed his first post conviction motion on June 23, 1998. Under § 2244(d)(2) an application is "filed" when "it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (citations omitted). Petitioner's argument is contrary to the plain language of § 2244(d) because Petitioner's motion for collateral relief could not have been "pending" before it was "filed" on June 23, 1998. See Long, 393 F.3d at 394-95 (state post conviction review petition had no effect on tolling because the limitations period had already run when it was filed); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004) (same).

Petitioner also argues that the limitations period should be equitably tolled because he mistakenly believed that it did not begin until the conclusion of post conviction relief, and because he is actually innocent. On the first point, he argues:

> In the absence of any post-AEDPA change to Rule 3:22-12, or any instructions from either New Jersey or federal courts which would have given prisoners fair warning of the possible preemptive effect of the AEDPA's 1-year limitation, prisoners in New Jersey had a reasonable expectation that they would be able to use all 5-years allotted to them by

14

> the state while preserving their right to
> seek review of their constitutional claims in
> federal courts.

(Traverse at pp. 11-12.)

However, neither his ignorance of the AEDPA nor Petitioner's mistaken belief that he could obtain federal habeas review is an extraordinary circumstance warranting equitable tolling of the statute of limitations. See Jones, 195 F.3d at 160; see also Pliler v. Ford, 542 U.S. 225 (2005); Johnson v. Hendricks, 314 F.3d at 162-63; Fahy v. Horn, 240 F.3d at 343.

Petitioner further argues that equitable tolling is warranted because he is actually innocent. He bases his claim of actual innocence on newly discovered evidence. Specifically, the newly discovered evidence arose in February 1997, when Shirley Pagan visited Petitioner in prison and told him that Eloiso Colon, her husband (and Petitioner's friend), had confessed to the murder, three weeks before he died on July 15, 1995, while he was suffering from a terminal illness.

The Third Circuit has not yet determined whether a showing of actual innocence is grounds for equitable tolling [5], and the circuits are split. See Souter v. Jones, 395 F.3d 577, 599 (6th Cir. 2005) ("equitable tolling of the one-year limitations period

---

[5] See Knecht v. Shannon, 132 Fed. Appx. 407, 409 n.2 (3d Cir. 2005); cf. In re Dorsainvil, 119 F.3d 245, 248 (3d Cir.1997) ("Were no other avenue of judicial review available for a party who claims that s/he is factually or legally innocent . . . we would be faced with a thorny constitutional issue").

based on a credible showing of actual innocence is appropriate"); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (same); contra David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003); Flanders v. Graves, 299 F.3d 974 (8th Cir. 2002).

Prisoners asserting innocence as a gateway to procedurally defaulted claims must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." House v. Bell, 126 S. Ct. 2064, 2077 (2006); see also Schlup v. Delo, 513 U.S. 298 (1995); Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002). Actual innocence means "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). A petitioner must "support his allegations of constitutional error with *new reliable evidence* - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324 (emphasis in original); see also Cristin, 281 F.3d at 420. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324; see also Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir.2000); but see House, 126 S. Ct. at 2086.

Petitioner presented his newly discovered evidence claim on post conviction review. The Law Division conducted an

16

evidentiary hearing on August 24, 2001, and August 28, 2001. The Appellate Division affirmed the order denying post conviction relief as follows:

> At the conclusion of the evidentiary hearing, Judge Lario made detailed findings and issued an oral opinion consuming forty-seven transcript pages. He analyzed in detail each issue raised by defendant . . .
>
> Regarding the new trial motion, the judge found the statements of the various witnesses to contain significant inconsistencies internally and with each other, as well as with evidence that was clearly established at the trial. He found significant the three-week lapse between the alleged confession and Colon's death without reporting the information to the authorities, the long delay of more than a year before disclosing the information to anyone, and the close relationship between Colon and defendant and their families. He did not find credible the testimony of the witnesses regarding Colon's alleged confession.
>
> The judge correctly applied the three-prong test for a new trial motion, namely that the newly discovered evidence must be: (1) material to the issue and not merely cumulative, impeaching or contradictory; (2) discovered since the trial and not reasonably discoverable beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted . . . . The judge concluded that although the first two prongs were met, the third was not. He found the evidence of the alleged confession extremely unreliable and unpersuasive. Considering the overwhelming evidence of defendant's guilt based upon the trial evidence, presentation of the newly discovered evidence would not carry with it the probability of a different result.

> The judge further rejected defendant's application on the related issue, discovery regarding Colon's fingerprints, because the information was not in the State's possession, it would be equally available to both parties, and it would not be relevant to the defense . . . .
>
> We have reviewed the record, and we are satisfied that Judge Lario's factual findings are well supported by substantial and credible evidence in the record . . . We are further satisfied that the judge applied the correct legal principles to each of defendant's three applications. We find no error and no mistaken exercise of discretion in the conclusions reached by applying the law to the facts. We affirm substantially for the reasons expressed by Judge Lario in his comprehensive oral opinion of August 28, 2001.

State v. Villegas, Docket No. A-4222-01T4 slip op. at 10-12 (App. Div. Feb. 26, 2004).

This Court finds that Petitioner has not presented new evidence demonstrating that no reasonable jury would have found him guilty beyond a reasonable doubt. Significantly, Petitioner's newly discovered evidence does not call into question the eyewitness testimony of Charles, who testified that he was six inches away from Petitioner's face when Petitioner shot his father. Because Petitioner has not met the extremely high burden required for a showing of actual innocence, equitable tolling on the ground of actual innocence is not warranted.

To summarize, because the statute of limitations expired June 23, 2004, eight days before Petitioner filed his § 2254

18

Petition on July 1, 2004, and Petitioner is not entitled to equitable tolling, his Petition is barred by the statute of limitations. This Court dismisses the Petition as untimely. 28 U.S.C. § 2244(d)(1).

B. Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the Petition as untimely is correct.

### III. CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus with prejudice as untimely and denies a certificate of appealability.

*[signature]*
RENÉE MARIE BUMB, U.S.D.J.

DATED: *September 27, 2006*